# In the United States Court of Federal Claims

|  |  |
|---|---|
| JAMES BENNETT, | |
| Plaintiff, | No. 23-cv-694 |
| v. | Filed: February 9, 2024 |
| THE UNITED STATES, | |
| Defendant. | |

*James Bennett*, Rancho Santa Fe, CA, Plaintiff, appearing *pro se*.

*Kyle S. Beckrich*, United States Department of Justice, Civil Division, Washington, D.C., appearing for Defendant.  With him on the briefs was *Marli J.P. Kerrigan*, Assistant General Counsel, Litigation Branch, Federal Bureau of Prisons, Washington, D.C.

## MEMORANDUM AND ORDER

Plaintiff James Bennett, appearing *pro se*, seeks redress for a myriad of claims including (i) alleged breaches of duty by the United States via the Federal Bureau of Prisons (BOP) to quarantine and isolate infected prisoners and provide a working and sleeping environment free from disease, under 42 U.S.C. § 250; (ii) a Fifth Amendment Taking of his income and earnings without just compensation; (iii) illegal exaction of restitution funds under 18 U.S.C. § 3663A; and (iv) vicarious liability for the actions of the BOP and associated medical personnel.  Amended Complaint (ECF No. 10) (Complaint or Compl.) at 38, 44, 47, 48, 50.[1]  Pending before the Court is Defendant United States' Motion to Dismiss the Amended Complaint (ECF No. 12) (Mot.).  Defendant contends that Plaintiff's claims must be dismissed for lack of subject matter jurisdiction

---

[1] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

1

pursuant to Rule 12(b)(1), or alternatively for failure to state a claim under Rule 12(b)(6).  *Id.* at 7.  For the reasons stated below, Defendant's Motion to Dismiss is **GRANTED**.

## <u>PROCEDURAL BACKGROUND</u>

Plaintiff originally filed his Complaint on May 9, 2023, claiming breach of medical duty, a Fifth Amendment Taking, and illegal exaction.  *See* Complaint (ECF No. 1).  On July 7, 2023, prior to Defendant's deadline to respond to the Complaint, Plaintiff moved for summary judgment.  Pl. Motion for Summary Judgment (ECF No. 7).  As Plaintiff's summary judgment motion was prematurely-filed, the Court stayed further briefing on the motion pending Defendant's response to the Complaint.  Order, dated July 7, 2023 (ECF No. 8).  On July 12, 2023, Defendant timely moved to dismiss this action for lack of jurisdiction, and alternatively, for failure to state a claim.  Defendant's Motion to Dismiss (ECF No. 9).  Subsequently, on August 1, 2023, Plaintiff amended his Complaint.  *See* Compl.  Immediately after filing his Amended Complaint, Plaintiff responded to Defendant's previously-filed Motion to Dismiss.  Plaintiff's Opposition to Defendant's Motion to Dismiss (ECF No. 11).  On August 3, 2023, the Court denied as moot both Plaintiff's Motion for Summary Judgment (ECF No. 7) and Defendant's Motion to Dismiss (ECF No. 9), which were each based on Plaintiff's original, now-defunct Complaint.  Minute Order, dated Aug. 3, 2023.  Subsequently, Defendant timely filed the present Motion to Dismiss the Amended Complaint (ECF No. 12), which is the subject of this Memorandum and Order.  *See* Mot.[2]

---

[2] Plaintiff again moved for summary judgment on September 27, 2023, immediately after Defendant had filed its Reply in support of its Motion to Dismiss and before this Court could rule on the pending motion.  Motion for Summary Judgment (ECF No. 15).  As Plaintiff's summary judgment motion was, again, prematurely-filed, the Court struck the September 27, 2023 motion from the docket, without prejudice.  Order, dated Oct. 2, 2023 (ECF No. 16).

**FACTUAL BACKGROUND**[3]

On October 10, 2006, Plaintiff was convicted of wire and bank fraud and was sentenced by the United States District Court for the Central District of California to a term of imprisonment of 121 months.  *See* Compl., Ex. 28, 2006 Judgment (ECF No. 1-1) (2006 Judgment) at 80; Compl. at 21; Mot. at 8.  The District Court also ordered Plaintiff to pay restitution in the amount of $751,050.00, and a special assessment of $1,000.00.  2006 Judgment at 80.  While incarcerated, Plaintiff alleges he worked at the prison's law library.  Compl. at 53.  Plaintiff contends he was forced to work with, and sleep in proximity of, two prisoners known by the BOP to be infected with tuberculosis.  *Id.* at 41.  Plaintiff states that as a result he subsequently contracted tuberculosis. *Id.* at 15, 41.  Plaintiff's alleged tuberculosis infection, medical treatment, and subsequent physical condition form the basis for this action.

Specifically, Plaintiff claims to have contracted tuberculosis some time in 2010, after being near infected individuals in the prison.  *See* Compl. at 15; *id.*, Ex. 1, Sarah Bur Deposition (ECF No. 1-1) (Bur Depo.) at 2; Mot. at 9.  Plaintiff further asserts the Defendant failed to construct or maintain a quarantine facility and failed to quarantine prisoners with communicable diseases.

---

[3] Pursuant to Rule 12(b)(1), when considering a motion to dismiss for lack of subject matter jurisdiction this Court may consider evidence provided with the Complaint.  *See 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378 (Fed. Cir. 2012) (cleaned up) ("'[O]nce challenged, allegations alone are insufficient to meet the complainant's burden' to establish jurisdiction. The [court] must satisfy itself that there is a factual basis for it to exercise jurisdiction, and in doing so it 'may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.'").  This Court may similarly consider such proffered evidence in evaluating the plausibility of the claims under Rule 12(b)(6).  *See* 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 1357 (3d ed. 2004) ("[C]ourts may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment."); *see also Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1309 (Fed. Cir. 2015).

Compl. at 15, 25.  Plaintiff contends that while he was diagnosed and placed on a treatment regimen, BOP officials never conducted follow-up examinations and ignored his complaints until he eventually became paralyzed from the waist down.  *Id.* at 16–17.  Plaintiff claims portions of his spine and associated nerves were "destroyed" by the infection, and that he eventually required two surgeries in 2012 to remove some of his ribs and part of his spine.  *Id.* at 16–18, 34.

Plaintiff was released from prison on May 30, 2014, and was released from supervised probation on May 30, 2019.  Mot., Appendix 1, BOP: Federal Inmates by Number (June 27, 2023) (App. 1)[4]; Compl., Ex. 17, Release Email (ECF No. 1-1) (Release Email) at 40.[5]  He contends that due to his exposure in prison to tuberculosis, he has been unable to function as he had prior to incarceration.  Compl. at 18.

Plaintiff alleges the following five causes of action:

1. The BOP breached its duty by failing to construct a quarantine facility and isolate infected prisoners.  *Id.* at 38.

2. The BOP effected a Fifth Amendment Taking of Plaintiff's future income and earnings without just compensation.  *Id.* at 44.

3. The BOP effected an illegal exaction of restitution money.  *Id.* at 47.

4. The Defendant is vicariously liable for the actions of prison officials and medical personnel associated with the breach of duty and taking claims.  *Id.* at 48–49.

5. The BOP breached its duty to provide a working and sleeping environment free from disease.  *Id.* at 50.

---

[4]    *See Find An Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp#inmate_results (last visited Jan. 24, 2024).

[5] This is corroborated by the terms of the Judgment ordering Plaintiff to be placed on supervised release for a term of five years upon release from imprisonment.  2006 Judgment at 81.

## APPLICABLE LEGAL STANDARDS

The Tucker Act, 28 U.S.C. § 1491, provides this Court with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, . . . or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act serves as a waiver of sovereign immunity for "certain claims for monetary relief against the United States" but does not create a right to relief itself.  *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *see United States v. Mitchell*, 463 U.S. 206, 212, 218 (1983).

To establish a right of relief under the Tucker Act, a "substantive right must be found in some other source of law."  *Mitchell*, 463 U.S. at 216; *see Todd v. United States*, 386 F.3d 1091, 1093–94 (Fed. Cir. 2004) (citing *United States v. Testan*, 424 U.S. 392, 398 (1976)).  The constitutional, statutory, or regulatory provision must be "fairly . . . interpreted as mandating compensation by the Federal Government for the damage sustained."  *Testan*, 424 U.S. at 400 (internal quotations omitted) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967) (en banc)).

This Court must dismiss claims outside its subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(h)(3).  In deciding a motion to dismiss for lack of subject matter jurisdiction, this Court accepts all uncontroverted facts as true and construes the facts in the light most favorable to the non-moving party.  *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014); *Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002).  Whereas here a plaintiff proceeds *pro se*, the Court must hold his filings to "less stringent standards than [those] drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations omitted).  This does not, however, excuse Plaintiff's burden to establish the Court's jurisdiction by a preponderance of the evidence.

*See Landreth v. United States*, 797 F. App'x 521, 523 (Fed. Cir. 2020) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)); *Curry v. United States*, 787 F. App'x 720, 722 (Fed. Cir. 2019). *Pro se* plaintiffs must still demonstrate, as a threshold matter, that the Court has jurisdiction to consider the case. *See DeMaio v. United States*, 93 Fed. Cl. 205, 209 (2019) (citing *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995) (noting that *pro se* litigants are not exempt from meeting this Court's jurisdictional requirement)); *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007) (citing *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).

Jurisdiction here is further governed by the six-year statute of limitations set forth in 28 U.S.C. § 2501, which states: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." *See Acton v. United States*, 932 F.2d 1464, 1465 (Fed. Cir. 1991). A claim accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Brighton Village Assocs. v. United States*, 52 F.3d 1056, 1060 (Fed. Cir. 1995) (quoting *Kinsey v. United States*, 852 F.2d 556, 557 (Fed. Cir. 1988)). Further, a claim "only accrues if the plaintiff knew or should have known of the existence of the events fixing the government's liability." *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1356 (Fed. Cir. 2006), *aff'd*, 552 U.S. 130 (2008); *see also Ingrum v. United States*, 560 F.3d 1311, 1314–15 (Fed. Cir. 2009).

Notably, the Section 2501 six-year statute of limitations is jurisdictional in nature. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132–34 (2008); *Ideker Farms, Inc. v. United States*, 71 F.4th 964, 974–75 (Fed. Cir. 2023) (citing *John R. Sand & Gravel Co.*, 457 F.3d at 1355 ("[W]e are unwilling to disturb the well-settled law that section 2501 creates a

jurisdictional condition precedent for suit in the Court of Federal Claims, which may not be waived by the parties.")).  The United States Court of the Appeals for the Federal Circuit has consistently affirmed dismissal of claims for lack of subject matter jurisdiction for claims filed outside Section 2501's six-year statute of limitations.  *See, e.g.*, *Inter-Tribal Council of Ariz., Inc. v. United States*, 956 F.3d 1328, 1339, 1345 (Fed. Cir. 2020) (affirming dismissal pursuant to Rule 12(b)(1) because a claim was barred by the statute of limitations where plaintiff was aware of the allegedly offending terms well before the six-year period); *Blodgett v. United States*, 792 F. App'x 921, 924, 926 (Fed. Cir. 2019) (holding the claims were properly dismissed for lack of subject matter jurisdiction where they were barred under the Tucker Act's six-year, "jurisdictional," statute of limitations); *Park v. United States*, No. 2023-1738, 2023 WL 8447280, at *1 (Fed. Cir. Dec. 6, 2023) (affirming dismissal for lack of subject matter jurisdiction where the claims were time-barred); *Pohl v. United States*, No. 2022-2080, 2023 WL 2982476, at *4, *6 (Fed. Cir. Apr. 18, 2023) (same).

Finally, Defendant contends that dismissal is also appropriate under Rule 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) should be granted if the facts asserted in support of a claim do not entitle the plaintiff to a legal remedy.  *See Welty v. United States*, 926 F.3d 1319, 1323 (Fed. Cir. 2019).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  RCFC 8(a)(2).  Factual allegations must "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This Court must "assume all factual allegations to be true and [] draw all reasonable inferences in plaintiff's favor."  *Henke*, 60 F.3d at 797.  A complaint filed *pro se* must be "liberally construed" regarding sufficiency of pleading under Rule 8(a).  *Erickson*, 551 U.S. at 94; *see Matthews v. United States*, 750 F.3d 1320, 1322 (Fed. Cir. 2014).  Even liberally construed, however, a *pro se* plaintiff must plead sufficient facts to plausibly state a claim for relief and is subject to the same prohibition on

conclusory allegations. *See Steffen v. United States*, 995 F.3d 1377, 1380 (Fed. Cir. 2021) (citing *Henke*, 60 F.3d at 799) ("Courts may scour pro se pleadings in search for a legal argument, but they cannot excuse a litigant's failure to bring a claim entitled to legal remedy."); *Redd v. United States*, 147 Fed. Cl. 602, 604 (2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Pieczenik v. Bayer Corp.*, 474 F. App'x 766, 770 (Fed. Cir. 2012)).

## DISCUSSION

### I.     This Court Lacks Jurisdiction Over Plaintiff's Breach of Duty Claims.

Plaintiff's first and fifth causes of action each allege a breach of duty—either failure to construct a quarantine facility or failure to provide a work and sleep environment free from disease. Compl. at 38, 50.   Both rely on the same statutory authority: 42 U.S.C. § 250 and 18 U.S.C. § 4126(c)(4).   *See* Compl. at 1–2, 38–39, 50; Bennett's Memorandum of Law in Opposition to the United States 2nd Motion to Dismiss and Supporting Affidavit of James Bennett in Support Thereof-Filed Concurrently Herewith (ECF No. 13) (Pl. Resp.) at 19.   Both also rely on the same alleged facts:  Plaintiff contends he was not quarantined from prisoners known to be infected with tuberculosis; Plaintiff contracted tuberculosis; Plaintiff was not provided adequate medical care; and Plaintiff's illness eventually required surgeries during which portions of Plaintiff's ribs and spine were removed.  *See* Compl. at 15–18, 25, 34.   In each claim, Plaintiff asserts a money-mandating statute is not required to be referenced due to the existence of the BOP's fiduciary duty. *Id.* at 41–42, 56–57.   Finally, both claims rely on the same alleged injury and request for relief— that Plaintiff is unable to function as he did prior to incarceration and should be compensated for his diminished earnings.  *Id.* at 18, 43, 56–57.   This Court therefore addresses these two claims together.

First, it is axiomatic that this Court lacks jurisdiction over tort claims, as expressly stated by the Tucker Act.  *See* 28 U.S.C. § 1491(a); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed.

Cir. 1993) ("It is well settled that the United States Court of Federal Claims lacks—and its predecessor the United States Clams Court lacked—jurisdiction to entertain tort claims. The Tucker Act expressly provides that the 'United States Court of Federal Claims shall have jurisdiction . . . in cases *not* sounding in tort.'") (emphasis in original). Courts must consider the true nature of the claim to determine jurisdiction. *See Chemsol, LLC v. United States*, 755 F.3d 1345, 1354 (Fed. Cir. 2014) (quoting *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008)). Breach of duty is an element of negligence, and as such, this Court construes Plaintiff's claims as alleging tortious behavior that resulted in injury, and for which Plaintiff requests compensatory damages. *See Gable v. United States*, 106 Fed. Cl. 294, 297–98 (2012) (holding that claims concerning negligence and medical malpractice sound in tort).[6] Accordingly, as this Court is barred from hearing claims arising from alleged tortious behavior, including negligence, this Court lacks jurisdiction over any claim of purported negligence.

Plaintiff cites the Federal Circuit's decision in *Taylor v. United States*, to support his assertion that his claim is not foreclosed from this Court's jurisdiction simply because the alleged actions could *also* be considered tortious. *See* Compl. at 8 (citing *Taylor v. United States*, 959 F.3d 1081, 1086 (Fed. Cir. 2020) (quoting *El-Shifa Pharm. Indus. Co. v. United States*, 378 F.3d 1346, 1353 (Fed. Cir. 2004))) ("[That] the complaint suggests the United States may have acted tortiously towards the appellants does not remove it from the jurisdiction of the Court of Federal Claims."). Plaintiff's citation is inapposite. The *Taylor* court stated that "the same operative facts may give rise to both a taking and a tort," in finding jurisdiction existed over an asserted Fifth Amendment Taking claim even though the conduct could also be characterized as tortious. 959

---

[6] Defendant also notes that Plaintiff previously filed a Federal Tort Claims Act action based on the same allegations. *See* Mot. at 14 n.4; *Bennett v. Dhaliwal*, 721 F. App'x 577 (9th Cir. 2017).

F.3d at 1086 (quoting *Moden v. United States*, 404 F.3d 1335, 1339 n.1 (Fed. Cir. 2005) (relying on *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 717 (1999))).  However, as noted, here Plaintiff's claims as alleged *only* sound in tort; the alleged breach, injury, and damages are solely indicative of a tort claim.

Plaintiff's only other proffered support for his claims is based on a non-money-mandating statute, an unclaimed administrative remedy, and an alleged fiduciary duty.  *See infra* Section I. The statutes and regulations on which Plaintiff relies are inadequate to confer jurisdiction on this Court.  *First*, Plaintiff cites 42 U.S.C. § 250  in support of his claims.  However, Section 250 is not money-mandating, and makes no reference to compensation.  *See* 42 U.S.C. § 250 ("The Service shall supervise and furnish medical treatment and other necessary medical . . . services, authorized by section 4005 of Title 18, in penal and correctional institutions of the United States.").  Plaintiff references associated sections of Title 18 to claim compensation based on a breach of the BOP's statutory duties.  *See* Compl. at 19, 40, 51 (citing 18 U.S.C. §§ 4005, 4007, 4009, 4010); Pl. Resp. at 27–28 (citing 18 U.S.C. § 4009).  These provisions, however, concern types of services and structures and how the BOP may pay for them.  None provide for compensation to prisoners.

*Second*, Plaintiff cites 18 U.S.C. § 4126(b) in support of his claims.  Section 4126, however, is not money-mandating; instead, it provides for a prison industries fund from which prisoners and former prisoners may be compensated.  *See* 18 U.S.C. § 4126(b) ("All valid claims and obligations payable out of said fund shall be assumed by the corporation."); § 4126(c)(4) (authorizing the fund to pay, "under [promulgated] rules and regulations . . . compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined").  Even aside from the fact that this statute is not money mandating, the statute does not

help Plaintiff here.  In each claim, Plaintiff asserts he is entitled to compensation under this statute based on the implementing regulations (Inmate Accident Compensation or IAC) permitting compensation for physical impairment derived from his work at the prison library.  Compl. at 43, 53, 57.[7]  Assuming, *arguendo*, that for the purposes of the regulations, Plaintiff's work at the prison library qualified as a work assignment, and his contracted illness qualified as a work-related injury, his reliance on this statute still suffers fatal flaws.  Plaintiff failed to exhaust his administrative remedies—i.e., he provided no allegation that he applied for the available benefits within the required time or at all.[8]  The IAC is the exclusive remedy for prisoner work-related injury.  *See United States v. Demko*, 385 U.S. 149, 153 (1966).[9]  A claim for such compensation is therefore not proper before this Court because, even if the original claim existed, it should have been brought before a district court for judicial review of the agency decision.  *See Berry v. Fed. Prison Indus., Inc.*, 440 F. Supp. 1147, 1148–49 (N.D. Cal. 1977); *see also Judicial review of administrative decision on claim for inmate accident compensation and lost wages*, 31 Fed. Proc. § 73:327 (L. Ed. 2023) (citing *Sturgeon*, 608 F.2d at 1155 ("[A] claimant for inmate accident compensation must exhaust available administrative remedies before judicial review of the claim is available.")).

---

[7] *See* 28 C.F.R. § 301.101(a) ("Compensation [for work-related injuries] may be awarded . . . to former federal inmates or their dependents for physical impairment or death resultant from injuries sustained while performing work assignments in Federal Prison Industries, Inc., in institutional work assignments involving the operation or maintenance of a federal correctional facility, or in approved work assignments for other federal entities . . . ."); § 301.102(a) ("[T]he term work-related injury shall be defined to include any injury, including occupational disease or illness, proximately caused by the actual performance of the inmate's work assignment.").

[8] Prisoners are required to file a claim "[n]o more than 45 days prior to the date of an inmate's release, but no less than 15 days prior to this [release] date."  28 C.F.R. § 301.303(a).

[9] *See also Aston v. United States*, 625 F.2d 1210, 1211 (5th Cir. 1980); *Sturgeon v. Fed. Prison Indus.*, 608 F.2d 1153, 1155 (8th Cir. 1979); *Roper v. Does*, No. 4:11CV415, 2012 WL 3078097, at *4 (N.D. Ohio July 10, 2012).

Finally, even if such a claim were proper before this Court, the statute of limitations has run because Plaintiff would have been aware of the unfavorable action in 2014, upon his release from prison.  Accordingly, the statute of limitations expired in 2020, at the latest, approximately three years before Plaintiff filed the present action.  *See* 28 U.S.C. § 2501; *Inter-Tribal Council of Ariz.*, 956 F.3d at 1345; *John R. Sand & Gravel Co.*, 457 F.3d at 1345.  Plaintiff's cited statutes and regulations therefore do not confer jurisdiction upon this Court.

Finally, Plaintiff claims a money-mandating authority is not required because the BOP breached its fiduciary duties.  *See* Compl. at 41–42, 56 (citing *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 476 (2003); *Mitchell*, 463 U.S. at 226).  While *White Mountain Apache Tribe* states that "the Government should be liable in damages of the breach of its fiduciary duties," 537 U.S. at 476 (quoting *Mitchell*, 463 U.S. at 226), the factual circumstances underlying that statement are significantly distinguishable.  That case involved trust property for which the Government was subject to duties as trustee by statute.  *Id.* at 475.  No such statutory duty exists here.

A fiduciary duty is performance owed by a person in an official capacity where that person is "required to act for the benefit of another person on all matters within the scope of their relationship" or "must exercise a high standard of care in managing another's money or property." *Fiduciary*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Duty*, BLACK'S LAW DICTIONARY (11th ed. 2019).  To create a fiduciary duty, the Government must "specifically accept[]" such a duty "by statute or regulation."  *Fairholme Funds, Inc. v. United States*, 26 F.4th 1274, 1296 (Fed. Cir. 2022) (quoting *Hopi Tribe v. United States*, 782 F.3d 662, 667 (Fed. Cir. 2015)).  As noted, Plaintiff's cited cases specifically involve property placed in the trust of the United States by statute, and Plaintiff's cited statute does not explicitly contemplate a fiduciary relationship.  *See*

42 U.S.C. § 250 (directing the supervision and furnishing of medical care).  Plaintiff suggests an implicit fiduciary relationship based on the Government's duty for prisoner safety and well-being as a custodian of prisoners.  *See* Compl. at 50–51; *see also Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 199–200 (1989)) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being . . . ."); *United States v. Comstock*, 130 S. Ct. 1949, 1961 (2010) ("If a federal prisoner is infected with a communicable disease that threatens others, surely it would be 'necessary and proper' for the Federal Government to take action, pursuant to its role as federal custodian . . . .").  Neither cited case, however, mentions a fiduciary duty.  Accepting such authority, the BOP may have owed a duty of care to Plaintiff—rather than an explicitly accepted fiduciary duty—to protect Plaintiff against communicable disease, but that simply reiterates that Plaintiff's claims sound in tort.  *See Taylor v. United States*, 296 F. App'x 34, 35 (Fed. Cir. 2008) (citing 28 U.S.C. § 1491(a)(1)) ("[T]he Court of Federal Claims does not have jurisdiction over tort claims, including claims based on theories of negligence or breach of duty.").  Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's breach of duty claims.

## II.    This Court Lacks Jurisdiction Over Plaintiff's Fifth Amendment Taking Claim. Alternatively, Plaintiff Failed to State a Claim Upon Which Relief Could be Granted.

Plaintiff's second cause of action alleges a Fifth Amendment Taking of his potential earnings.  Plaintiff relies on the same alleged facts supporting his claims for breach of duty, and he requests the same remedy of compensatory damages in the purported annual sum of his prior income ($2.5 million).  Compl. at 18, 46; *see also id.* at 43 (citing *Beer v. United States*, 696 F.3d 1174, 1186–87 (Fed. Cir. 2012)) ("'As relief, [Bennett is] entitled to monetary damages for the diminished amounts [he] would have been paid if' the Bureau of Prisons had upheld its Duties.").

Plaintiff claims that the BOP's alleged actions constituting a breach of duty resulted in a "taking of ribs, spine and other body parts result[ing] in a taking of Bennett's good health, income, and earnings." *Id.* at 45.

As Plaintiff alleges a "taking" of his body parts and good health, as well as his potential income, this Court addresses each separately.  The human body is not considered private property for the purposes of a Fifth Amendment Taking.  *See Harris v. United States*, 686 F. App'x 895, 898, 900 (Fed. Cir. 2017) (affirming the lower court's conclusion that private property "does not include a person's body or the use of a person's body"); *see also Perry v. United States*, No. 14-587C, 2014 WL 7366083, at *3 (Fed. Cl. Dec. 23, 2014) (citing *Gable*, 106 Fed. Cl. at 297–98) (finding that a claim of "human experimentation" was not a taking); *Duncan v. United States*, No. 04-1691C, 2006 WL 44173, at *3 (Fed. Cl. Jan. 5, 2006) ("Plaintiff's claims of . . . 'violations of property interests in his life and well being' . . . are dismissed for lack of subject matter jurisdiction.").  Accordingly, this Court lacks jurisdiction over a claim that Defendant effected a taking of Plaintiff's body parts and good health.

Plaintiff further claims, however, that the BOP's alleged actions, resulting in a worsened infection and removal of some of his body parts, left him unable to function as he had before his incarceration, thereby diminishing his earning potential compared to his prior annual income. Compl. at 18, 46.  Claiming that the Government previously established that his earnings before his incarceration were above $2.5 million per year, Plaintiff alleges the Government owes him that amount for each year after his surgeries in 2012.  *Id.* at 34, 46.

The alleged taking first accrued at the latest in May 2014, when Plaintiff was released from prison and permitted to work.  *See* App. 1; *see also* 2006 Judgment at 82 (demonstrating that the terms of his probation did not prohibit him from working, but instead prohibited employment in

activities associated with his fraud conviction).   Therefore, the applicable six-year statute of limitations would have run for this claim in May 2020.  *See* 28 U.S.C. § 2501; *Inter-Tribal Council of Ariz.*, 956 F.3d at 1345; *John R. Sand & Gravel Co.*, 457 F.3d at 1345.  Plaintiff filed his Complaint on May 9, 2023, approximately three years later.  Accordingly, this Court lacks jurisdiction over Plaintiff's Fifth Amendment Taking claim as it falls outside the bounds of 28 U.S.C. § 2501.

Plaintiff attempts to overcome the statute of limitations in two ways.  Neither is persuasive. *First*, Plaintiff asserts that the alleged taking—his diminished earnings—occurred when his "restraints were removed thus allowing him freedom to engage in his chosen profession from which his income and earnings were established," which he claims occurred upon release from supervised probation on May 29, 2019.  Compl. at 47.[10]  Plaintiff's claim for diminution of potential earnings, however, is wholly premised on the BOP's alleged failures resulting in Plaintiff's tuberculosis infection, removal of his body parts, and inability to function as he had beforehand.  *See id.* at 18 ("The removal of Bennett's ribs, spine and the fusing of the remainder left Bennett unable to function as he had prior to prison entry. Bennett's *earnings* and *income* were diminished as a result of destruction and *Taking* of Bennett's body.") (emphasis in original).

---

[10] Plaintiff also includes this assertion in his breach of duty claims.  *See* Compl. at 43 ("The accrual began upon Bennett's release from Supervised Release.  Only then was Bennett free to engage in the profession which allowed him to achieve those earnings which now represent damages."); *id.* at 56–57 ("The accrual began upon Bennett's release from Supervised Release.  That was when he was free to engage in the profession which allowed him to achieve those earnings which now represent damages.").  This Court does not reach the statute of limitations regarding Plaintiff's breach of duty claims, finding instead that the claims were barred from this Court's jurisdiction because they sound in tort and are not based on money-mandating statutes.  *See supra* Section I. Nevertheless, Plaintiff's accrual argument fails with regard to his breach of duty claims for the same reason it fails for his Takings claim.

Plaintiff recognized that the alleged taking of his earning potential was the result of his physical condition, not his probation. *See id.* at 44 ("In [exercising its authority under 42 U.S.C. § 250], the Bureau was authorized to have appropriate Medical Professionals take Bennett's Rib's and spine, *thus* taking his prior income and earnings abilities, to save Bennett's life.") (emphasis added). Further, in arguing that each annual loss of the requested income was a continuing claim, Plaintiff stated:

> The United States established Bennett's earnings at $2,500,000 per year prior to entry into the Bureau of Prisons' system and prior to taking of his health, income, and earnings through the Bureau's Breach of Duty and resulting Takings. As a result of the Bureau's actions, Bennett's [sic] is now only able to earn far less than before. *The difference being associated with 1) his health being taken based on the United States Breach of Duty and 2) the loss of his body parts, leading to diminished income and earning taken without compensation.*

*Id.* at 31 (internal citations omitted) (emphasis added). Plaintiff therefore acknowledged that the alleged diminished earning potential was the result of the alleged breach of duty and his subsequent physical condition, rather than the limitation placed on his potential occupation during probation.

*Second*, Plaintiff asserts his claims for annual diminished earnings are "continuing claims." *See* Compl. 5–6 (quoting *Beer*, 696 F.3d at 1186); *id.* at 29–30 (citing *Friedman v. United States*, 310 F.2d 381 (Ct. Cl. 1962), *cert. denied, Lipp v. United States*, 373 U.S. 932 (1963); *Cannon v. United States*, 146 F. Supp. 827 (Ct. Cl. 1956); *Burich v. United States*, 366 F.2d 984, 988 (Fed. Cir. 1966); *Hatter v. United States*, 203 F.3d 795, 799–800 (Fed. Cir. 2000), *aff'd in part & rev'd in part on other grounds*, 532 U.S. 557 (2001)); *see also* Pl. Resp. at 22, 25. All of Plaintiff's cited cases, however, involve claims for compensation allegedly due by constitutional clause or statute.[11]  Plaintiff here does not claim any constitutional or statutory compensation to

---

[11] *See Beer*, 696 F.3d at 1176, 1186 (involving violation of the Compensation Clause, a money-mandating provision, and finding a claim occurred each time a statutorily-promised adjustment was withheld); *Hatter*, 203 F.3d at 796, 800 (finding each instance of money wrongfully withheld from judges' monthly paychecks by an unconstitutional diminution in compensation constituted

which he was entitled but has been wrongfully denied.  He instead requests a determination that he is owed compensatory damages for each year, and then contends the Government has failed to provide those annual payments.  *See* Compl. at 43, 56–57.

Continuing claims occur "when a defendant owes a continuing duty," that can be broken down into distinct wrongs.  *Oenga v. United States*, 91 Fed. Cl. 629, 646 (2010) (citing *Cherokee Nation of Okla. v. United States*, 26 Cl. Ct. 798, 803 (1992)); *see also Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997); *Butte Cty., Idaho v. United States*, 151 Fed. Cl. 808, 816–17 (2021).  As an initial matter, Plaintiff fails to specifically identify compensation owed but denied by Defendant.  Instead, Plaintiff's requested relief is based on a theory of compensatory damages, which are available in this court for breaches of contract or under the direction of a money-mandating statute.  *See Boaz Housing Auth. v. United States*, 994 F.3d 1359, 1370 (Fed. Cir. 2021) (citing *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997)); *L'Enfant Plaza Props., Inc. v. United States*, 227 Ct. Cl. 1, 11 (1981); *Rodriguez v. United States*, 69 Fed. Cl. 487, 495 (2006).  Relevantly, the Court of Federal Claims has found that it lacks jurisdiction over damages shaped by tort law, including "loss of future earnings capability" based on government action.  *Rodriguez*, 69 Fed. Cl. at 494–95.  While not binding, such a holding is persuasive here.  Not only do Plaintiff's requested compensatory damages not constitute continuing claims, but they further demonstrate that the basis of Plaintiff's claim sounds in tort, rather than a taking, denying this Court jurisdiction to adjudicate Plaintiff's claim.[12]

---

continuing claims); *Burich*, 366 F.2d at 985 (involving a federal employee seeking to recover overtime compensation alleged to be due under section 201 of the Federal Employees Pay Act); *Friedman*, 310 F.2d at 383 (involving an executrix suing for disability retirement pay allegedly to have been arbitrarily denied her husband); *Cannon*, 146 F. Supp. at 828 (involving civilian employees whose prior reduction in salary was later set aside).

[12] As noted, Plaintiff's breach of duty claims *only* sound in tort.  *See* discussion of *Taylor v. United*

Even if Plaintiff's Taking claim was not barred by the statute of limitations, Plaintiff nevertheless fails to state a claim upon which relief could be granted pursuant to Rule 12(b)(6). The Fifth Amendment states in part, "[N]or shall private property be taken for public use, without just compensation." U.S. CONST. amend. V.  As noted above, (1) removal of a body part does not constitute a "taking" of private property as a matter of law, and (2) Plaintiff did not allege compensation currently owed but denied.  Plaintiff claims that property interests can be determined by state law, Compl. at 4 (citing *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163–64 (1998)), and further that California law recognizes that "*income* arising from the . . . *skill*, *efforts* and *industry* is community *property*." *Id.* at 5 (quoting *Beam v. Bank of Am.*, 490 P.2d 257, 260 (Cal. 1971)) (emphasis in original).  The cited cases are inapposite, however, as they do not demonstrate that compensatory damages for lost income constitute property for the purposes of an alleged Fifth Amendment Taking.[13]

Plaintiff has also failed to demonstrate a public use, a requirement to maintain a Fifth Amendment Taking claim.  U.S. CONST. amend. V.  Plaintiff points to two statutes—neither of them money-mandating—to claim that his health (and therefore his potential earnings) was taken to save public taxpayers the cost of constructing an adequate quarantine facility.  Compl. at 4, 6, 45.  Plaintiff asserts the BOP could have built or maintained a quarantine facility, pursuant to 18

---

*States*, 959 F.3d 1081 (Fed. Cir. 2020), *supra* Section I.

[13] *Phillips* involved whether interest earned on a client funds account constituted private property. 524 U.S. at 159.  It is therefore distinguishable from the situation here, as Plaintiff does not currently possess money that is being taken by Defendant, nor is he owed compensation that is being denied.  To the extent this Court would find *Beam* persuasive authority, it is similarly unhelpful to Plaintiff.  It is a divorce case, and the income alluded to as "property" is that already earned or being earned for the purposes of distribution to the parties.  *See* 490 P.2d at 260.  As noted *supra*, Plaintiff is claiming compensatory damages for purported lost earnings, not statutorily-mandated monetary compensation to which he is currently entitled and is being denied.

U.S.C. § 3621(b), to comply with its requirements to supervise prisoner healthcare, pursuant to 42 U.S.C. § 250.  *Id.* at 45.  Plaintiff, however, cites no authority, and this Court is not aware of any, demonstrating that a hypothetical government decision to forgo an expenditure for a potential, speculative project would constitute a "public use" for the purposes of an alleged Fifth Amendment Taking.  Plaintiff has therefore failed to allege facts that could plausibly constitute a taking.

**III.    Plaintiff's Illegal Exaction Claim is Barred by the Statute of Limitations.**

Plaintiff alleges Defendant is in violation of 18 U.S.C. § 3663A by purportedly collecting restitution payments on its own behalf, rather than distributing the funds to Plaintiff's victims. Compl. at 47–48.  When sentencing a defendant for a crime against property committed by fraud or deceit, a court shall order "that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate."   18 U.S.C. § 3663A(a)(1); *see also* § 3663A(c)(1)(A)(ii).  Plaintiff was ordered to pay restitution to four named victims in the total amount of $751,050.00.  2006 Judgment at 80–81.  Plaintiff provided an accounting demonstrating a summary of his debt balances, as well as a list of payments, by date and penalty type, made between 2010 and 2015.  *See* Compl., Ex. 20, Restitution Payments (ECF No. 1-1) (Payments) at 53–54.[14]  Plaintiff claims Defendant deposited his payments in the Treasury, and that the victims did not receive them pursuant to the Order of Judgment.  Compl. at 22–23 (citing Compl., Ex. 19, Restitution Collection Letters (ECF No. 1-1) (Collection Letters); Ex. 20, Payments).[15]

---

[14] The two pages appear to be identical listings of the debt types and payments made, but the first page of the exhibit is updated through June 29, 2015, *see* Payments at 53, while the second page recites the same payments, though only through December 10, 2013, *see id.* at 54.

[15] Exhibit 19 is comprised of two letters from the District Court (1) requesting appearance to show cause why Plaintiff had not entered into arrangements for payment, and (2) demanding completion of a Financial Disclosure Statement to determine enforcement of the debt.  Collection Letters at 50–51.

An illegal exaction occurs when a "'plaintiff has paid money over to the Government . . . and seeks return of all or part of that sum' that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'"  *Boeing Co. v. United States*, 968 F.3d 1371, 1383 (Fed. Cir. 2020) (quoting *V.I. Port Auth. v. United States*, 922 F.3d 1328, 1333 (Fed. Cir. 2019)).  This Court has jurisdiction over illegal exactions.  *See id.* at 1382 ("Case law involving the Tucker Act . . . has long distinguished three types of claims against the federal government: contractual claims, illegal-exaction claims, and money-mandating statute claims."); *see also id.* at 1382–83 (quoting *Eastport S.S. Corp.*, 372 F.2d at 1007) ("[T]he non-contractual claims we consider under Section 1491 can be divided into two somewhat overlapping classes—those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum [illegal exaction]; and those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury [money-mandating statute].").

Plaintiff has demonstrated Defendant has collected money from him pursuant to the Judgment.  *See* Payments at 53.  He requests this Court order a return of those funds—or at least a distribution to the proper payee, his victims.  *See* Compl. at 48.  While these allegations are facially sufficient to demonstrate that Plaintiff has paid money to the Government, and that he now seeks return of paid funds allegedly improperly collected, purportedly in contravention of the statute, this Court is nevertheless time-barred from considering Plaintiff's claims by the applicable six-year statute of limitations.  *See* 28 U.S.C. § 2501; *Inter-Tribal Council of Ariz.*, 956 F.3d at 1345; *John R. Sand & Gravel Co.*, 457 F.3d at 1345.

This Court considers the materials provided by Plaintiff, cited in support of his claims, in determining both the Court's jurisdiction and whether Plaintiff alleged a plausible claim.  *See*

*Watkins*, 11 F.3d at 1584; *Dimare Fresh, Inc.*, 808 F.3d at 1306 (citing 5B WRIGHT & MILLER, FED. PRAC. & PROC. § 1357); *see also supra* note 3.  To the extent that Plaintiff's claim that Defendant is keeping his payments without properly distributing them to his victims relies on his provided payment history, Plaintiff has not demonstrated a payment since June 29, 2015. Payments at 53.  The statute of limitations for any claims of payments made that Plaintiff now wishes returned therefore ran in June 2021.  *See* 28 U.S.C. § 2501 (barring a claim in this Court unless it is filed within six years of when the claim accrues).  Plaintiff filed the present suit approximately two years after the statute of limitations had run.  *See* ECF No. 1 (denoting a filing date of May 9, 2023).  Accordingly, this Court is unable to consider Plaintiff's claim on the merits because it lacks jurisdiction over his illegal exaction claim as a matter of law.  *See Acton*, 932 F.2d at 1465.

**IV.     This Court Lacks Jurisdiction Over Plaintiff's Vicarious Liability Claim.**

Plaintiff claims Defendant is vicariously liable for the BOP's actions that allegedly resulted in the taking of his body parts and earnings.  Compl. at 49.  Specifically, the claims for which Plaintiff alleges vicarious liability are the alleged breach of duty to isolate infected prisoners, and the alleged taking of Plaintiff's future earnings.  *See id.* ("Plaintiffs [sic] incorporate by reference as though fully alleged herein all paragraphs within the "VERIFIED FACTS" and Causes of Action One and Two above and reallege each one to support this Cause of Action against The United States.").  As Plaintiff alleges the underlying causes of action resulted from a violation of 42 U.S.C. § 250, the actions for which he claims Defendant is vicariously liable include the alleged permitted exposure to tuberculosis, infection, medical treatment, and the resulting physical condition.  *See id.* at 49–50.

Plaintiff cites California law to claim employees of the Government—here, BOP detention and medical personnel—are agents for whose actions Defendant is liable as a principal. *See id.* at 49 (citing CAL. CIV. CODE §§ 2297, 2338 (West 2024)). Such reliance is unnecessary, however, as Defendant can be liable for the authorized actions of its employees that give rise to valid claims. *See Holland v. United States*, 621 F.3d 1366, 1384 (Fed. Cir. 2010); *Puyallup Tribe of Indians v. United States*, 871 F.2d 1096, 1096 (Fed. Cir. 1989) (citing *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 63–66 (1984)); *Barber v. United States*, No. 18-1422, 2018 WL 5292394, at *2 (Fed. Cl. Oct. 10, 2018) (quoting *Betz v. United States*, 40 Fed. Cl. 286, 293 (1998)). Even assuming *arguendo*, however, that Plaintiff has a valid claim for vicarious liability, this Court nonetheless lacks jurisdiction to consider it because the claims and underlying actions upon which it relies are either based in tort or were brought outside the statute of limitations period.

Regarding the alleged breach of duty, Plaintiff alleges a breach of a duty to isolate him from infected prisoners, as well as tuberculosis infection, inadequate medical treatment, and eventual removal of body parts due to the infection. *See* Compl. at 15–18, 24–25, 34. Such assertions are indicative of tort claims and are best characterized as negligence or medical malpractice, both of which sound in tort and are barred from this Court's jurisdiction. *See* 28 U.S.C. § 1491(a); *Shearin v. United States*, 992 F.2d at 1197; *Gable*, 106 Fed. Cl. at 297–98.[16] As this Court lacks jurisdiction over the underlying tort claim, it therefore lacks jurisdiction over Plaintiff's claim of vicarious liability for Defendant's alleged tortious actions associated with those

_____

[16] As noted, this Court also lacks jurisdiction over such a claim for several other reasons. First, Plaintiff failed to cite a money-mandating statute. *See supra* Section I. Second, Plaintiff failed to establish that a fiduciary duty existed in lieu of a money-mandating statute. *Id.* Finally, to the extent Plaintiff may have been eligible for IAC compensation, such a claim (1) should have been brought in district court after a timely filing and denial, or (2) was filed in this Court outside the statute of limitations, which would have run in 2020, six years after his release from prison. *Id.*

claims.  *See* 28 U.S.C. § 1491(a); *Taylor*, 296 F. App'x at 35; *Shearin*, 992 F.2d at 1197.  It is also worth noting here that this Court found, in the alternative, that it lacked jurisdiction over Plaintiff's breach of duty claims because the relied-upon statute was not money mandating.  *See supra* Section I.  Here, Plaintiff cites the same statute—42 U.S.C. § 250—to claim that Defendant is vicariously liable for the failure of those in its employ to supervise his medical treatment.  Compl. at 49. Accordingly, for the same reasons as discussed above, this Court also lacks jurisdiction over Plaintiff's vicarious liability claim for lack of a money-mandating statute.  See *Testan*, 424 U.S. at 400 (quoting *Eastport S.S. Corp.*, 372 F.2d at 1009).

Similarly, to support his alleged taking claim, Plaintiff alleges the same facts supporting his breach of duty claims.  *See* Compl. at 15–18, 25, 34.  As noted, Plaintiff's body is not considered private property for the purposes of a taking.  *See Harris*, 686 F. App'x at 898, 900. Further, regarding alleged diminished earnings, Plaintiff's purported annual loss of income is not a continuing claim.  *See Brown Park Estates-Fairfield Dev. Co.*, 127 F.3d at 1456.  Plaintiff filed his taking claim in 2023.  *See* ECF No. 1.  The claim is therefore time-barred because it was brought outside the statute of limitations, which would have run in 2020, six years after his release from prison, when he was able to work.  *See* App. 1; *see also* 28 U.S.C. § 2501; *Acton*, 932 F.2d at 1465.  Like his breach of duty claims, Plaintiff's taking claim can also be characterized as a tort claim based on the supporting asserted facts and requested relief, and therefore this Court lacks jurisdiction to consider it.  *See* 28 U.S.C. § 1491(a); *Shearin*, 992 F.2d at 1197; *see also Rodriguez*, 69 Fed. Cl. at 494–95 (noting the Court lacks jurisdiction over damages shaped by tort law, including "loss of future earnings capability").  As this Court lacks jurisdiction over the underlying taking claim, it therefore lacks jurisdiction over Plaintiff's claim of vicarious liability for Defendant's alleged actions associated with that claim.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 12) is **GRANTED** pursuant to Rules 12(b)(1), 12(h)(3), and 12(b)(6), and Plaintiff's Complaint (ECF No. 10) is accordingly **DISMISSED** without leave to replead.  The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

February 9, 2024
Washington, D.C.

24